# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:18-cr-34-1 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| APOLINAR MERAZ-MAGANA, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant Apolinar Meraz-Magana ("Meraz-Magana") for a compassionate release due to COVID-19 circumstances. (Doc. No. 337 ["Mot"].) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 338 ["Opp'n"].) For the reasons that follow, Meraz-Magana's motion is denied without prejudice.

## I. BACKGROUND

On January 17, 2018, Meraz-Magana was one of thirteen defendants charged in a drug conspiracy. (Doc. No. 10 [Indictment].) On November 14, 2018, Meraz-Magana entered a plea of guilty to one count of conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (11-14-2018 Minutes; Doc. No. 252 [Plea Agreement].)

On February 20, 2019, the Court sentenced Merez-Magana to a term of 270 months imprisonment. (2-20-19 Minutes; Doc. No. 305 [Judgment].) Meraz-Magana is currently serving his sentence at Oakdale II Federal Correctional Institution ("FCI") and has a projected release date of May 23, 2037. *See* https://www.bop.gov/inmateloc/ (last visited 4-23-2020).

On April 20, 2020, Meraz-Magana filed the present *pro se* motion, pursuant to 18 U.S.C. § 3582(c)(1)(A), for an order for a compassionate release. (Mot. at 3232.) In support of his motion, he discusses generally the impact of the COVID-19 pandemic on prisons across the country and at his facility, and the fact that he is 58 years old and "is [afraid] of getting infected with COVID-19." (*Id.*) He posits that, if he contracts the virus, he could "suffer complications because of his old age[.]" (*Id.*) He asks to be released to home confinement because no one "can guarantee that anyone will survive the virus if one were to get infected with it." (*Id.*)

The government argues that Meraz-Magana's motion should be denied because he has not exhausted his administrative remedies. (Opp'n at 3236.) Meraz-Magana does not represent, and there is no evidence in the record to suggest, that he has exhausted his administrative remedies.

## II. DISCUSSION

The sentencing court has no inherent authority to modify an otherwise valid sentence. *United States v. Washington,* 584 F.3d 693, 700 (6th Cir. 2009). Rather, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston,* 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross,* 245 F.3d 577, 858 (6th Cir. 2001)). Title 18 U.S.C. § 3582(c)(1)(A) provides that courts may "reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does

not exceed the unserved portion of the original term of imprisonment)" where "extraordinary and compelling reasons warrant [release]," or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Bureau of Prisons ("BOP") could move a district court under § 3582(c)(1)(A) for the compassionate release of a federal prisoner. On December 21, 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. The amendment provides prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt . . . of such a request" by the warden of the prisoner's facility. 18 U.S.C. § 3582(c)(1)(A). No exceptions to the exhaustion requirement are listed in the statute.

Meraz-Magana does not represent that he has exhausted all administrative rights to appeal the BOP's failure to bring a motion on his behalf, or that 30 days has passed since the warden of his facility received a request from him to file such a motion. Moreover, the government represents that, according to the BOP, "as of April 22, 2020, Meraz-Magana has not asked the Bureau to seek compassionate release on his behalf." (Opp'n at 3237.) Courts are split on whether a district court may waive the exhaustion and 30-day requirement due to the exigent circumstances presented by COVID-19. *Compare United States v. Zukerman*, 16 Cr. 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) (waiving exhaustion requirement in light of COVID-19); *United States v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (same); with *United States v. Raia*, 954 F.3d 594 (3rd Cir. 2020) (finding exhaustion requirement in § 3582 mandatory); *United States v. Alam*, No. 15-20351, 2020 WL

3

1703881, at *2 (E.D. Mich. Apr. 8, 2020) (collecting cases finding that "a failure to satisfy 18 U.S.C. § 3582(c)(1)(A)'s filing requirements bars defendants from filing motions for compassionate release, and that the judiciary has no power to craft an exception to these requirements for defendants seeking release during the COVID-19 pandemic"); *see also United States v. Johnson*, No. RDB-14-0441, 2020 WL 1663360, at *2 (D. Md. Apr. 3, 2020) (holding that the "exhaustion requirements of § 3582(c)(1)(A) are jurisdictional in nature, and [the district] court may not expand its jurisdiction by waiving such requirements").

In *Raia*, the Third Circuit ruled that the fact that the petitioner did not wait the requisite 30-day period before seeking a compassionate release from the district "present[ed] a glaring roadblock foreclosing compassionate release[.]" *Raia, supra*. In so ruling, the court explained:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia [68 year old individual with diabetes and "heart issues"]. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. *See generally* Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp. Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance. And given the Attorney General's directive that BOP "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," we anticipate that the exhaustion requirement will be speedily dispatched in case like this one. Memorandum from Attorney Gen. to Dir., Bureau of Prisons 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download. So we will deny Raia's motion.

*Id*.

The Court agrees with the reasoning and logic of the Third Circuit. In addition to a lack of any indication in the language of § 3582(c)(1)(A) that the exhaustion requirement is

discretionary or may be waived, the exhaustion requirement serves the important purpose of allowing the BOP—an agency that is in a better position to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and compelling reasons" for release—the opportunity to address such requests in the first instance. Accordingly, the Court "will not read an exception into § 3582(c)(1) which does not exist[,] and Meraz-Magana's motion is denied for failure to exhaust his administrative remedies. *See Johnson*, 2020 WL 1663360, at *6 (denying inmate's motion for compassionate release for failure to exhaust administrative remedies).

Of course, even if Meraz-Magana could overcome this "glaring roadblock," he would not be entitled to relief on the basis of the present motion. The existence of "extraordinary and compelling reasons" is governed by the Federal Sentencing Guidelines. Under the guidelines, a defendant must establish he is suffering from either a terminal illness or a "serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1.

At age 58, Meraz-Magana has not established that he is within the group of individuals who have been identified by the Centers for Disease Control and Prevention ("CDC") as being at a higher risk of contracting COVID-19. *See* CDC, *Coronavirus Disease 2019: People Who are at Higher Risk*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-pecautions/groups-at-higher-risk.html (last visited 4-23-2020). His motion, therefore, would fall short of establishing a right to a compassionate release. *See, e.g., United States v. Clark*, No. 3:13-cr-163-FDW-1, 2019 WL 1052020, at *3 (W.D.N.C. Mar. 5, 2019) (denying motion for compassionate release, in part,

because inmate failed to provide medical records to substantiate claims that medical conditions placed defendant at a higher risk of contracting COVID-19).

Further, if the Court entertained Meraz-Magana's motion on the merits, it would be without authority to modify his sentence, as he requests, to provide for home confinement because that authority rests with the BOP. *See Tapia v. United States*, 564 U.S. 319, 331, 131 S. Ct. 2382, 180 L. Ed. 2d 357 (2011) (holding "[w]hen a court sentences a federal offender the BOP has plenary control, subject to statutory constraints, over 'the placement of the prisoner's imprisonment,' [18 U.S.C.] § 3621(b)]"); *see, e.g., United States v. Curry*, No. 6:06-082-DCR, 2019 WL 508067, at *1 (E.D. Ky. Feb. 8, 2019) ("Because the First Step Act [of 2018] gives the *Attorney General* [or the BOP by designation of the Attorney General] the discretion to determine if and when home confinement is appropriate, this Court does not have the authority to grant [home confinement].") (emphasis in original). The BOP has "begun immediately reviewing all inmates who have COVID-19 risk factors, as described by the CDC, … to determine which inmates are suitable for home confinement." Fed Bureau of Prisons, Home Confinement, www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp, April 5, 2020 (last accessed 4-23-2020).[1] The BOP has instructed that "inmates do not need to apply to be considered for home confinement" under this directive, but "any inmate who believes they are eligible may request to be referred to Home Confinement and provide a release plan to their Case

---

[1] According to the BOP's website, the BOP has already increased home confinement by more than 40% since March 2020. *Id.* In fact, under § 12033(b)(2) of the Coronavirus Aid. Relief, and Economic Security Act ("CARES" Act), Pub. L. No. 116-136, enacted March 27, 2020, the Attorney General now has the authority to "lengthen the maximum amount of time for which the Director [of the BOP] is authorized to place inmates in home confinement under 18 U.S.C. § 3624(c)(2) . . . ." As of April 17, 2020, the BOP has transferred 1,198 inmates to home confinement under this new authority. *See* http://www.bop.gov/coronavirus/index.jsp (last visited 4-23-2020).

Manager." *Id*. The fact that the BOP has already begun to identify vulnerable inmates for release to home confinement represents further proof that it is in the best position to quickly consider whether the relief Meraz-Magana now seeks is appropriate.

### III. Conclusion

For the foregoing reasons, as well as the reasons in the government's brief opposing compassionate release, Meraz-Magana's motion for a compassionate release is denied without prejudice.

**IT IS SO ORDERED**.

Dated: April 29, 2020

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**