# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:18-cr-34-1 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| APOLINAR MERAZ-MAGANA, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the *pro se* motion of defendant Apolinar Meraz-Magana ("Meraz-Magana") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 374.) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 380.) For the reasons set forth herein, the motion to vacate is DENIED.

## I.  BACKGROUND

On January 17, 2018, an indictment issued charging Meraz-Magana and twelve other individuals with participation in a drug trafficking conspiracy. On November 14, 2018, Meraz-Magana entered a plea of guilty to Count 1 of the indictment, charging conspiracy to possess with intent to distribute and distribution of cocaine, pursuant to 21 U.S.C. §§ 841(a)(1) and 846, and Count 36, charging possession of a firearm in furtherance of a drug trafficking crime, pursuant to 18 U.S.C. § 924(c)(1)(A). (Minutes of Proceedings, 11/14/2018.) During the change of plea hearing, in which Meraz-Magana appeared with his counsel and an interpreter, the Court conducted its standard colloquy in compliance with Rule 11 of the Federal Rules of Criminal Procedure. The Court reviewed with Meraz-Magana the constitutional rights he was forfeiting by

entering a guilty plea, the charges in the indictment to which he was pleading guilty, the statutory penalties associated with those charges, the application of the sentencing guidelines and possible enhancements, and the elements of the charged offenses. As to each, Meraz-Magana stated he understood and was prepared to enter a plea of guilty to Counts 1 and 36. The Court also asked government's counsel to state the facts the government was prepared to prove if the case were to go to trial, including the facts relating to the quantity of trafficked drugs the government believed were attributable to Meraz-Magana. Following this recitation, Meraz-Maga indicated that he understood and that he was guilty of these offenses. (Doc. No. 323 (Transcript of Change of Plea Hearing) at 16–47.[1]) At the conclusion of the plea colloquy, the Court accepted Meraz-Magana's guilty pleas as having been made knowingly, intelligently, and voluntarily with the advice of counsel. (*Id*. at 48–49.)

Meraz-Magana's guilty pleas were entered pursuant to a plea agreement with the government. (Doc. No. 252.) The agreement contained a comprehensive waiver of rights. According to the plea agreement, Meraz-Magana expressly and voluntarily waived his right to appeal his conviction or sentence, "including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255." (*Id*. at 6.) The agreement did, however, reserve Meraz-Magana's right to appeal: (1) any punishment in excess of the statutory maximum; (2) the Court's determination of his criminal history category; and (3) any finding by the sentencing court

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

as it relates to any drugs reasonably foreseeable and attributable to defendant "that exceeds the amount of drugs set forth in [the plea] agreement's factual basis at paragraph 22 rr." (*Id*. at 6–7.) The waiver provision further provided that it did not bar Meraz-Magana's legal remedies relating to claims of ineffective assistance of counsel and prosecutorial misconduct. (*Id*. at 7.)

The sentencing hearing was conducted on February 20, 2019, at which time the Court sentenced Meraz-Magana to a prison term of 210 months on Count 1 and 60 months on Count 36, to be served consecutively, for a total aggregate sentence of 270 months of imprisonment. (Minutes of Proceedings, 2/20/2019; Doc. No. 305 (Judgment); *see* Doc. No. 330 (Transcript of Sentencing Hearing).) Contrary to his representations in the present § 2255 motion, Meraz Magana took a direct appeal, challenging the amount of drugs that were attributed to him and this Court's application of a four-level enhancement for his leadership role in the drug conspiracy. On May 26, 2020, the Sixth Circuit affirmed this Court's judgment, including its application of the leadership role enhancement and the amount of drugs it attributed to Meraz-Magana. (Doc. No. 340 (Opinion).) The mandate issued June 17, 2020 (*see* Doc. No. 341), and Meraz-Magana did not seek certiorari review.

He timely filed his motion to vacate on June 6, 2021. In it, Meraz-Magana raises four grounds for relief. Ground One alleges "insufficiency of the evidence to support a charge of conspiracy on a factually barren indictment." (Doc. No. 374 at 4; Doc. No. 374-1 at 3–9.) Ground Two asserts that his "sentence was constitutionally and procedurally invalid[,]" based on judicially determined facts and perceived mischaracterizations in the Presentence Investigation Report. (Doc. No. 374 at 5; Doc. No. 374-1 at 9–18.) Ground Three challenges his counsel's decision to stipulate to the authenticity of the lab tests on the seized drugs. (Doc. No. 374 at 7; Doc. No. 374-

3

1 at 18–25.) Ground Four raises a Fourth Amendment challenge to the legality of a search of a storage unit. (Doc. No. 374 at 8; Doc. No. 374-1 at 25–30.)

## II. STANDARD OF REVIEW

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

A criminal defendant may not utilize a § 2255 motion as a substitute for a direct appeal. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *Capaldi v. Pontesso*, 135 F.3d 1122, 1124 (6th Cir. 1998) ("An application under § 2255 . . . should not be considered a substitute for direct appeal."); *see Brecht v. Abrahamson*, 507 U.S. 619, 637–38, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). To assert a claim not raised on direct appeal, a petitioner ordinarily must show cause for the default and prejudice. *See Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1064, 140 L. Ed. 2d 828 (1998); *United States v. Frady*, 456 U.S. 1584, 1603–04, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1998).

A petitioner who entered a guilty plea must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Abrahamson*, 507 U.S. at 637). Therefore, a court may only grant relief under § 2255 if the petitioner demonstrates "'a fundamental defect which inherently

4

results in a complete miscarriage of justice.'" *Id.* at 736 (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)). A petitioner further bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. Vague and conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).

When a petitioner challenges the validity of a plea, the representations of the petitioner, his lawyer, the prosecutor, and the judge "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Such "[s]olemn declarations in open court carry a strong presumption of verity." *Id*. Subsequently-presented conclusory allegations that fly in the face of the record are subject to summary dismissal. *Id*.

A court should hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). Thus, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Napier v. United States*, No. 93-5412, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255.") (citing, among

authorities, *Machibroda v. United States*, 368 U.S. 487, 496, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962)); *cf. Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007) (finding that the burden is met where the petitioner "offers more than a mere assertion . . . he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'"). Where (as here) the judge considering the § 2255 motion also presided over the guilty plea and sentencing hearings, the judge may rely on his or her recollections of those proceedings. *See Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

The Court finds that an evidentiary hearing is not warranted in the present case. The undisputed facts in the record demonstrate that Meraz-Magana's claims are either waived by the plea agreement, contracted by the record, or inherently incredible. Moreover, Court finds that the uncontradicted record conclusively shows that Meraz-Magana is entitled to no relief.

### III. FORFEITED GROUNDS (GROUNDS ONE, TWO, AND FOUR)

Three of the grounds for relief in the motion to vacate—Grounds One (insufficient evidence), Two (unlawful sentence), and Four (unlawful search and seizure)—are explicitly waived pursuant to the terms of the plea agreement. Because Meraz-Magana knowingly and voluntarily waived his right to raise these issues on direct appeal or in a § 2255 motion, they are waived.

It is well settled that a defendant may waive any right, including a constitutional right, in a plea agreement if the waiver is knowingly and voluntarily made. *United States v. Toth*, 668 F.3d 374, 377–78 (6th Cir. 2012); *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) (quotation marks and citations omitted). Where a knowing and voluntary waiver has been executed, only challenges to the validity of the waiver itself are to be entertained. *See In re Acosta,* 480 F.3d 421,

422 (6th Cir. 2007); *see also Portis v. United States*, 33 F.4th 331, 335 (6th Cir. 2022) ("The process leading to the waiver . . . must be fair and comply with Rule 11 of the Federal Rules of Criminal Procedure."); *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003) ("When a [d]efendant waives his right to appeal his sentence in a valid plea agreement, this Court is bound by that agreement and will not review the sentence except in limited circumstances.") (quotation marks and citation omitted).

Here, Meraz-Magana specifically waived his right to file a § 2255 motion. As set forth above, during the guilty plea hearing, the Court conducted a thorough plea colloquy in compliance with Rule 11 and Meraz-Magana has not suggested otherwise. In particular, he stated he had sufficiently discussed the plea agreement (including the wavier provision) and his plea with counsel, and that he was satisfied with his attorney's representation. (Doc. No. 323 at 44–45.) Finally, he insisted that no one had coerced him to plead guilty or promised him anything beyond that which was stated in the plea agreement in exchange for his guilty plea. (*Id.* at 46.) Accordingly, the Court, once again, finds that Meraz-Magana understood the nature of the waiver and that he entered into it voluntarily, after having been afforded sufficient time to consult with counsel. *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings.") Even now, Meraz-Magana does not suggest that his waiver was other than knowing and voluntary. *See Portis*, 33 F.4th at 335 (enforcing plea agreement waiver on § 2255 motions where petitioners did "not challenge the plea colloquy . . . [or] deny that they knowingly and voluntarily entered into the plea agreement"). Consequently, the Court finds that his knowingly and voluntary waiver precludes Grounds One, Two and Four.

Moreover, to the extent that Meraz-Magana has attempted to circumvent the preclusive effect of the waiver agreement by recasting any of these grounds as ineffective assistance of counsel claims, the effort is in vain. "Federal case law is quite clear that a defendant who has agreed to waive any direct appeal or collateral attack to his sentence may not assert ineffective assistance of counsel as a means to 'end run' around the waiver provision of his plea agreement[.]" *See, e.g., United States v. Thompson*, No. 3:06-cr-56, 2008 WL 6506506, at *13 (W.D. Ky. Nov. 7, 2008) (citing *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005)). It is clear that each of Grounds One, Two and Four raise claims that attack the validity of his convictions or sentence and were, therefore, explicitly waived by the plea agreement.

### IV. GROUND THREE—INEFFECTIVE ASSISTANCE OF COUNSEL

In Ground Three, Meraz-Magana maintains that his trial counsel provided ineffective representation when, for the purposes of sentencing, he stipulated to the authenticity of the laboratory reports that weighed and tested the drugs seized during the course of the federal investigation. (Doc. No. 374-1 at 18; *see* Doc. No. 330 at 9–10.) The Sixth Circuit has explicitly recognized that a § 2255 motion is the proper vehicle for raising an ineffective counsel claim and that it would not entertain such a claim in a direct appeal. *Singleton v. United States*, No. 93-4253, 1994 WL 464245, at *1 (6th Cir. Aug. 26, 1994) (citing, among authorities, *United States v. Carr*, 5 F.3d 986, 993 (6th Cir. 1993)); *see also Massaro v. United States*, 538 U.S. 500, 504–05, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003) (Supreme Court holding that a § 2255 motion is preferable to a direct appeal for deciding an effective-assistance claim). Moreover, the plea agreement carved out of the waiver provision an exception for claims for ineffective assistance of counsel. (Doc. No.

252 at 7.) Accordingly, to the extent that this ground does not represent an attempt to relitigate an argument raised on direct appeal, Meraz-Magana has properly brought this claim before the Court.

Claims of ineffective assistance of counsel are analyzed under the familiar *Strickland* standard. Under *Strickland*, in order to succeed on such a claim, a defendant must make two showings. First, he "must show that [his] counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Second, the defendant must also show that counsel's deficient performance prejudiced him. *Id*.

Under the first *Strickland* prong, deficient performance means that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. At this stage of the analysis, the proper measure of attorney performance is an "objective standard of reasonableness," with reasonableness judged based on the particular case's facts, viewed as of the time of the attorney's conduct. *Id*. at 688, 690. Judicial scrutiny of counsel's performance, however, is "highly deferential." *Id*. at 689. Further, a court's focus is on the adequacy of "counsel's actual performance, not counsel's (hindsight) potential for improvement." *Coe v. Bell*, 161 F.3d 320, 342 (6th Cir. 1998) (citation omitted).

In considering the second *Strickland* prong, a defendant is required to show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. However, "[an] error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691 (citation omitted). A defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

A criminal defendant is entitled to effective assistance of counsel during the plea and sentencing process. *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). In the context of a guilty plea, an attorney provides ineffective assistance by performing outside "the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). While Meraz-Magana does not have to demonstrate that he would have prevailed at trial, a defendant alleging ineffective assistance of counsel in connection with his guilty plea must establish both deficient performance and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (quotation marks and citations omitted); *see Griffin v. United States*, 330 F.3d 733, 737 n.1 (6th Cir. 2003) (citation omitted).

When reviewing claims of ineffectiveness of counsel, the Court is mindful that its scrutiny of defense counsel's performance is highly deferential. Meraz-Magana's counsel is strongly presumed to have rendered adequate assistance, and to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Strickland*, 466 U.S. at 689-90 ("strong presumption" that counsel's conduct fall within a wide range of reasonable professional assistance); *see Nix v. Whiteside*, 475 U.S. 157, 165, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986).

By stipulating to the authenticity of the laboratory reports and failing to object to the admission of the certificates verifying the testing results, Meraz-Magana argues that his trial counsel deprived him of his "right under the [S]ixth [A]mendment to the U.S. Constitution to confront the analysts who signed the certificates." (Doc. No. 374-1 at 19.) While most of this ground is devoted to a recitation of the general law surrounding the Confrontation Clause, Meraz-Magana references a potential issue of cross-contamination that was raised with respect to some

10

of the bags that were seized from a storage unit. He argues that had counsel not stipulated to the test results, he could have explored the cross-contamination issue on the cross-examination of the laboratory technicians. (*Id.* at 22–25.)

Meraz-Magana cannot satisfy either prong of the *Strickland* analysis. In particular, he has failed to argue, let alone establish, that there was a problem with the laboratory test results that were reflected in the certificates. He does not suggest that the lab erred in either its identification of the drugs tested or in its determination of the quantity of the drugs that were submitted for analysis. Applying the appropriate deference due to counsel's strategic decisions, the Court cannot say that defense counsel's decision to stipulate to the test results constituted ineffectiveness or resulted in prejudice to Meraz-Magana. *See United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) ("counsel's decision to stipulate to certain evidence . . . involves a strategic choice, which is 'virtually unchallengeable' if made after thorough investigation") (quoting *Strickland*, 466 U.S. at 690–91).

Nevertheless, Meraz-Magana highlights an issue involving possible cross-contamination of certain baggies that contained suspected drugs. At the sentencing hearing, Special Agent Timothy Alvord ("S.A. Alvord"), of the Federal Bureau of Investigation ("FBI"), testified to the steps he took during the course of the investigation into the charged drug conspiracy. On cross-examination, he acknowledged that three baggies containing suspected drug residue were recovered from the same storage unit. (Doc. No. 330 at 48.) Because the baggies were being stored in the same unit, S.A. Alvord testified that it was not possible to demonstrate definitively through testing that each baggie had previously contained substantial amounts of methamphetamine. (*Id.*) As there was a chance that drugs found in one bag had cross-contaminated the other baggies, S.A.

11

Alvord conceded that it was only possible to know with certainty that one of the bags had been used to store drugs. (*Id.*) On re-direct, however, the agent clarified that there was drug residue found on the *inside* of each of the bags that was submitted for testing, and that the baggies were each labeled with numbers indicating the amount of drugs that had been contained therein (two bags were labeled "2.5 lb" and one was marked "2.5"). (*Id.* at 56–57; *see also id.* at 31.)

Defense counsel was able, on cross-examination of the investigating agent, to thoroughly explore the possibility of cross-contamination of the baggies. Counsel also raised the issue of cross-contamination in oral argument before sentence was imposed. (*Id.* at 84–86.) Ultimately, the Court concluded that the government had met its burden of demonstrating the amount of the drugs attributable to Meraz-Magana. With respect to the baggies containing suspected amounts of methamphetamine, the Court emphasized that trace amounts of methamphetamine had been found inside each baggie and that the bags were "labeled with the weight of 2.5 pounds for each bag." (*Id.* at 93.) It also noted that the bags were packaged and labeled in a manner that was consistent with other bags containing drugs that were attributed to Meraz-Magana. (*Id.*)

There is nothing in the record to suggest that the laboratory technicians had anything to do with the collection of the baggies at the scene, or that the possibility that drugs found in one bag had bled into another would have compromised the results of the testing of the residue itself or the determination of the amount that was actually tested. Rather, defense counsel properly and thoroughly explored the issue of cross-contamination with the agent who seized the baggies and presented the argument of cross-contamination to the Court for its consideration. The Court rejected the argument based upon the totality of the evidence offered by the government. On direct appeal, the Sixth Circuit ruled that the Court did not clearly err in this determination. (Doc. No.

340 at 8.)[2] Accordingly, Meraz-Magana cannot demonstrate either that counsel's performance was deficient or that any deficiency resulted in prejudice. Ground Three, therefore, is without merit and is denied.

## V. CONCLUSION

For the foregoing reasons, Meraz-Magana's motion to vacate, set aside, or correct his sentence is denied. Further, the Court certifies that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: July 15, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[2] To the extent that Ground Three is merely a recasting of the arguments raised by Meraz-Magana in his direct appeal relating to the Court's determination of drugs amounts attributed to him, this ground is denied for the additional reason that a defendant cannot use a § 2255 proceeding, in the guise of ineffective assistance of counsel, to relitigate issues decided adversely against him on direct appeal. *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996); *see also Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) (a "§ 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law.") (citations omitted).